```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

RAMON PICKENS #K82154,         )
                               )
          Plaintiff,           )
                               )
     v.                        )     No.  10 C 5866
                               )
ROBERT MOORE, etc., et al.,    )
                               )
          Defendants.          )
```

## MEMORANDUM OPINION AND ORDER

Ramon Pickens ("Pickens") filed this pro se action against Robert Moore ("Moore"), a parole officer with the Illinois Department of Corrections, seeking relief under 42 U.S.C. §1983 ("Section 1983"). Pickens accompanied his self-prepared Complaint with requests (1) for permission to proceed in forma pauperis and (2) for appointment of counsel to represent him pro bono publico.

This Court granted both requests, and after the first two appointed attorneys found themselves unable to serve, the present counsel was appointed and filed an Amended Complaint.[1] That pleading advanced a single count alleging that Moore violated Pickens' due process rights under the Fourteenth Amendment by filing a false report with the Illinois Prisoner Review Board ("Board") that caused him to be wrongfully incarcerated for nine extra months.

---

[1] All references to allegations in the Amended Complaint will simply take the form "¶ --."

Moore then filed a motion to dismiss that has now been fully briefed. For the reasons discussed below, that motion is denied.

### Standard of Review

Under Rule 12(b)(6) a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." In that respect Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) has done away with the formulation first announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

As Twombly, 550 U.S. at 562-63 put it:

> Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the Conley Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.

Twombly, id. at 570 held instead that a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right to relief above the speculative level" (id. at 555).

But almost immediately thereafter the Supreme Court issued another opinion that seemed to cabin Twombly somewhat. Airborne

<u>Beepers & Video, Inc. v. AT & T Mobility LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007) has explained that further development:

> Two weeks later the Court clarified that <u>Twombly</u> did not signal a switch to fact-pleading in the federal courts. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). To the contrary, <u>Erickson</u> reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" 127 S.Ct. at 2200, quoting <u>Twombly</u>, 127 S.Ct. at 1964. Taking <u>Erickson</u> and <u>Twombly</u> together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.

And since then <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937 (2009) has both (1) further explicated and (2) universalized <u>Twombly</u>'s teaching.

It is thus the <u>Twombly</u>-<u>Iqbal</u> canon that has since controlled the treatment of complaints and does so here. Here is <u>Adkins v. VIM Recycling, Inc.</u>, 644 F.3d 483, 492-93 (7th Cir. 2011), a recent statement of the Rule 12(b)(6) standard by our Court of Appeals that employs long-familiar language without the overgenerous gloss that had been provided by <u>Conley v. Gibson</u>:

> We construe the complaint in the light most favorable to the plaintiffs, accepting as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiffs' favor.

This opinion adheres to that dictate.

## **Factual Background**

Pickens was incarcerated at two different Illinois

3

correctional centers for a little over nine months until he was granted mandatory supervised release on November 9, 2007 (¶¶7, 8). On that date he was immediately transferred to Kane County Jail due to an outstanding warrant, and he remained at that facility for another five months until his release on April 11, 2008 (¶10, 11).

On June 19, 2009 Pickens' parole officer Moore placed Pickens on "lockdown" and required him to undergo electronic monitoring at his host site (¶17). Six days later Moore placed Pickens under house arrest at the same address (¶18). Pickens called Moore on September 29, 2009 to inform him that his life was in danger and that he needed to sever his electronic monitoring band and evacuate the premises (¶19). Moore filed a parole violation report the next day, and two days later Pickens voluntarily turned himself in to Moore's supervisor (¶¶20, 21).

Pickens alleges that Moore's parole violation report contained two falsities: that Pickens had not completed substance abuse treatment and that he had been "AWOL" for a total of 526 days (¶22, 23). On October 15, 2009 a preliminary parole revocation hearing was held, at which time Moore's report was introduced against Pickens (¶24). Pickens was informed on November 9, 2009 that he would not be released on his mandatory "out-date" (¶25). Board then told Pickens at a December 2, 2009 hearing that his mandatory out-date had passed and that he would

in fact be released (¶26).

Despite that assurance, Board issued a decision two days later in which it revoked Pickens' mandatory supervised release, and he then remained in custody until July 8, 2010 (¶¶27, 28). Pickens filed several offender grievances during that period of detention (¶29). On September 15, 2010 this Court received Pickens' pro se Complaint.[2]

## Heck v. Humphrey

As a threshold matter (although it is framed only in conclusory fashion at the end of Moore's motion to dismiss), Moore insists that Pickens' Section 1983 claim for damages is blocked by Heck v. Humphrey, 512 U.S. 477 (1994). Heck, id. at 487 held that "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated," the plaintiff's Section 1983 suit must be dismissed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]"

In opposing the potential applicability of Heck and its progeny to this type of case, Pickens misapprehends the scope of the doctrine. But that misapprehension is of no moment, because both parties have failed to address a dispositive issue in that

---

[2] Pickens has attached to his Amended Complaint as its Ex. B a fax from Lutheran Social Services of Illinois certifying that he completed substance abuse treatment and was discharged on January 2, 2009, nearly nine months before Moore submitted his report stating Pickens' purported noncompletion of that program.

regard: Pickens' status as a former inmate for whom habeas relief is unavailable (more on that later).

As for Pickens' error, he is wrong to assert that the Heck bar applies only to an underlying conviction and not to a revocation of parole. Both as a matter of logic and of precedent, Heck applies equally to challenges to revocation of parole (see Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005); Knowlin v. Thompson, 207 F.3d 907, 909 (7th Cir. 2000)). Hence the fact that Pickens challenges his revocation of parole rather than his underlying conviction or sentence does not bring him out from under Heck.

Moreover, the nature of Pickens' claim appears to place it within the core of the type of claims blocked by Heck because he is challenging the fact and duration of the confinement that resulted from the revocation of his parole (see Heck, 512 U.S. at 481; Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)). That sort of claim stands in contrast to one challenging, for example, the constitutionality of parole procedures, which is not always barred by Heck (see Wilkinson, 544 U.S. at 82).

Despite the seeming applicability of Heck in this case, however, the dispositive issue on the subject (unaddressed by both parties) becomes whether Heck operates on a former inmate, now released, for whom habeas relief is currently unavailable. That debate goes back to Heck itself, in which the majority

6

criticized Justice Souter's argument in concurrence that individuals not in custody for habeas purposes should fall outside of that case's holding.[3] Justice Scalia, writing for the majority, rejected that approach (512 U.S. at 490 n.10):

> We think the principle barring collateral attacks--a longstanding and deeply rooted feature of both the common law and our own jurisprudence--is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.

Undeterred, Justice Souter picked up on his Heck concurrence in Spencer v . Kemna, 523 U.S. 1 (1998), this time commanding a five-Justice plurality in stating that inmates not in custody and thus unable to bring a habeas petition were not barred by Heck from bringing Section 1983 suits challenging their confinement (see id. at 18-21 (Souter, J., concurring); id. at 21-22 (Ginsburg, J., concurring); id. at 25 n.8 (Stevens, J., dissenting)). As Justice Souter explained his view (id. at 20-21 (footnote omitted)):

> Now, as then, we are forced to recognize that any application of the favorable-termination requirement to §1983 suits brought by plaintiffs not in custody would produce a patent anomaly: a given claim for relief from unconstitutional injury would be placed beyond the scope of §1983 if brought by a convict free of custody (as, in this case, following service of a full term of imprisonment), when exactly the same claim could be redressed if brought by a former prisoner who had

---

[3] Of course the plaintiff in Heck was incarcerated when he brought suit, so any statement regarding former inmates should technically be viewed as dictum.

7

> succeeded in cutting his custody short through habeas.
>
> The better view, then, is that a former prisoner, no longer "in custody," may bring a §1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy.

Recognizing the absence of controlling precedent, the Supreme Court as recently as 2004 referred to the applicability of Heck to individuals for whom habeas relief is unavailable as unsettled (Muhammad v. Close, 540 U.S. 749, 752 n.2 (2004)(per curiam)).

Nonetheless, based on Heck's dictum and the broad language of its holding, several circuits have held that Heck's favorable termination requirement bars Section 1983 suits brought by individuals for whom habeas relief is no longer available. But the majority of circuits, arguably including our own, have taken the opposite view. Carr v. O'Leary, 167 F.3d 1124, 1127 (7th Cir. 1999) was an early case in this Circuit approving Justice Souter's concurrence in Spencer, and that approval was echoed in Hoard v. Reddy, 175 F.3d 531, 533 (1999)(other citations omitted):

> As we explained in Carr v. O'Leary, 167 F.3d 1124, 1127 (7th Cir. 1999), there is probably an exception to the rule of Heck for cases in which no route other than a damages action under section 1983 is open to the person to challenge his conviction.

Just a year later our Court of Appeals held in DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000)(internal quotation marks omitted, brackets in original)--in a characteristically

8

thorough opinion by Judge Ripple--"that a prisoner may bring a §1983 claim challenging the conditions of [his] confinement where [he] is unable to challenge the conditions through a petition for federal habeas corpus." Although the reasons for the unavailability of habeas relief in the two cases are different, DeWalt's reasoning (id. at 617) has equal purchase in this case:

> Because federal habeas relief is not available to Mr. DeWalt, the language of §1983 and the Court's decision in Preiser dictate that he be able to proceed on his §1983 action. In Preiser, the Court held that the more specific federal habeas statute must necessarily supersede the more general §1983 statute to effectuate "explicit congressional intent." 411 U.S. at 89; see also Heck, 512 U.S. at 497-98 (Souter, J., concurring). In this case, where habeas is not applicable, the requirements of the habeas statute do not supersede the explicit right to proceed under §1983.

Hence this Court holds that Pickens, like the plaintiff in DeWalt, should be entitled to proceed under Section 1983. To hold otherwise would be to "apply the Heck rule in such a way as would contravene the pronouncement of five sitting Justices" (id. at 616-17).[4]

---

[4] It is a distinction without a difference that habeas relief is unavailable to Pickens not because he is challenging the conditions of his confinement, as was the case in DeWalt, but rather because he is no longer incarcerated. In that regard DeWalt, id. at 617-18 explicitly overruled Anderson v. County of Montgomery, 111 F.3d 494 (7th Cir. 1997) and Stone-Bey v. Barnes, 120 F.3d 718 (7th Cir. 1997), each of which had held that the Heck bar applied without regard to the fact that the claimant was no longer incarcerated and thus had no habeas relief available to him.

**Procedural Due Process Claim**

Having found that Heck is no impediment to Pickens' procedural due process claim, this Court now turns to the merits of that claim. To survive a motion to dismiss on that theory, Pickens must plausibly allege a deprivation of a cognizable liberty or property interest without due process of law (Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010)). To bring a viable claim under Section 1983 a plaintiff must allege that a defendant deprived him of a right secured by the Constitution or laws of the United States and that the defendant acted under color of state law.

There is no dispute that Moore, acting in his capacity as a parole officer, acted under color of state law. What is in dispute is whether Pickens has sufficiently alleged a violation of a constitutionally protected interest and whether he was deprived of that interest without due process of law.

Illinois prisoners do not have a legal entitlement to parole, so that a prisoner's hope that he or she will be released does not create a liberty or property interest in parole under the Fourteenth Amendment (Heidelberg v. Ill. Prisoner Review Bd., 163 F.3d 1025, 1027 (7th Cir. 1998)(per curiam)). By contrast, actual parolees such as Pickens have a conditional liberty interest circumscribed by the applicable conditions of parole (Morrissey v. Brewer, 408 U.S. 471, 481-84 (1979)). As a result,

parole revocation proceedings must comport with certain due process protections, outlined in rough form by Morrissey, id. at 484-90. Those protections include a prompt preliminary hearing followed by a plenary hearing to be held "within a reasonable time after the parolee is taken into custody" (id. at 488).

Here Moore filed a parole violation report with the Illinois Department of Corrections on September 29, 2009, and Pickens voluntarily turned himself in a day later. Then on October 15 Pickens received a preliminary parole revocation hearing, and on December 2 Board issued its decision formally revoking his mandatory supervised release. If Pickens were challenging only those procedures without more, they would perhaps satisfy the strictures of Morrissey.[5] But Pickens' argument goes much farther: He alleges that Moore took malicious action against him by knowingly making false statements in the parole violation report and that Board relied on those statements in finding that he had violated his parole.

As both parties concede, there is no Seventh Circuit case that directly addresses the kind of claim Pickens is making in the parole revocation context. Moore points to Hanrahan v. Lane, 747 F.2d 1137 (7th Cir. 1984), a prison discipline case, and

---

[5] Pickens should also be mindful that because Moore is (as of the Amended Complaint) the only defendant, actions undertaken by other individuals, including Board members, cannot form the basis for Moore's individual liability when he has in no way participated in or caused them.

11

Pickens delves into it with gusto in his responsive memorandum. But analysis reveals that the case is not of much help.

> Here is what <u>Hanrahan</u>, <u>id</u>. at 1141 said:
>
> We find that an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in <u>Wolff v. McDonnell</u> [, 418 U.S. 539 (1974)] are provided.

Once those procedural protections have been satisfied, all that is left for a court to decide is whether the sanction imposed by the prison authorities was "supported by some evidence" (<u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 447 (1985); see also <u>McPherson v. McBride</u>, 188 F.3d 785, 786 (7th Cir. 1999)). Application of that watered-down "some evidence" standard might indeed result in the dismissal of Pickens' claim, for it is undisputed that despite the two alleged falsities contained in Moore's report, Pickens had cut his electronic monitoring bracelet and left his host site without permission.

But applying a line of cases involving prison disciplinary sanctions to parole revocation proceedings is a bit like comparing apples and oranges. It is also incorrect as a matter of law: <u>Wolff</u>, 418 U.S. at 560-62 (the case on which <u>Hanrahan</u> relied) took great care to distinguish the two different contexts and declined to adopt the more robust protections outlined in <u>Morrissey</u> to claims challenging prison disciplinary proceedings. For that reason it would be inappropriate to apply <u>Hanrahan</u>'s

highly deferential standard of review to the very different animal of a parole revocation proceeding.

Consistently with that fundamental distinction, this Court also declines to apply Hanrahan's actual holding, which essentially whitewashes a prison guard's deliberate falsification of evidence, to similar misdeeds committed by parole officers in the parole revocation context. As Wolff, 418 U.S. at 561-62 pointed out, parole revocation proceedings simply do not implicate the same security concerns that are present inside prisons and that justify a more deferential standard of review of prison officials' actions. At this juncture this Court sees no reason to be equally forgiving of official misconduct on the part of parole officers when the same concerns are not present.[6]

## Conclusion

In sum, in the absence of any binding precedent necessitating the dismissal of Pickens' claim at this early stage of the litigation, Moore's motion to dismiss is denied, and Pickens is free to develop his claim further. If of course it

---

[6] Moore's effort to rely on the out-of-circuit precedent in Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) suffers from the same flaw: That case involved a claim challenging a prison misconduct sanction. In fact Freeman relied on Wolff and even Hanrahan in concluding (id. at 951) that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." As if more were needed to distinguish that case from the claim brought by Pickens (and none is required), the challenged sanction in Freeman involved only a 30-day disciplinary segregation (id. at 950).

turns out that Moore's falsehoods, even if proved, had nothing to do with the deprivation of Pickens' liberty, it is hard to envision how a procedural due process claim would survive. But that is an issue that must await further factual development.[7]

_____
Milton I. Shadur
Senior United States District Judge

Date: August 26, 2011

---

[7] See Appendix.

14

<u>Appendix</u>

As is frequently true of this Court's opinions, its research and caselaw references, and a material part of the analysis, owe more to the fine work by this Court's outstanding law clerks--in this instance Mark Angehr, who is approaching the end of his tenure--than to the submissions of counsel for the litigants. As stated earlier, neither side's counsel really picked up on the significance of the <u>Heck v. Humphrey</u> canon to this case, so that the detailed discussion here has stemmed solely from Mark's input instead. As always it should be made clear, however, that this Court has carefully reworked each sentence and read each case cited in this opinion (and, of course, some uncited cases as well), so that the end product is this Court's own. If then any errors have found their way into the final version, the sole responsibility must be laid at this Court's doorstep and not that of its first-rate law clerk.

Something more should be added as well: This footnote's reference to Mark should not be misunderstood as suggesting any invidious comparison with this Court's other (and recently departed) law clerk, Dan Klaff. Quite to the contrary, Dan's work was uniformly outstanding--something that could well have triggered the inclusion of a comparable Appendix in a number of the opinions issued in cases assigned to him. In short, a very high quality has marked all of both clerks' tenures, whether in the production of draft opinions or in the performance of the

other duties that devolve upon them in what is akin to a three-lawyer law firm.